UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA : | Criminal No. 09-084 (EGS) |
| : | |
| v. : | |
| : | |
| JOHN BOUGHTON, : | |
| : | |
| Defendant. : | |

MOTION OF THE UNITED STATES
FOR ORDER OF RESTITUTION AND MEMORANDUM IN SUPPORT

The United States of America, by and through its attorney, the United States Attorney for the District of Columbia, respectfully moves pursuant to 18 U.S.C. § 2259, for an order of restitution.[1] The government submits a memorandum of law in support of said motion.

I.  **BACKGROUND**

On April 17, 2009, defendant, John Boughton, pled guilty to a one count information charging him with possessing material constituting or containing child pornography, in violation of 18 U.S.C. § 2252A(a)(5)(B). According to the Statement of Offense presented at the plea hearing, ICE agents arrested defendant after they executed a search warrant issued by the United States District Court for the District of Columbia at his residence. See Document No. 12 ("Statement of Offense"). During that search, ICE agents seized five computers and various other electronic media, including a Seagate model 9W2512-560 external hard drive, serial number 4LH0CAQ7. Defendant admitted to agents that he possessed and received child

---

[1] On June 26, 2009, the United States requested consent from defendant regarding this motion for restitution, however, consent was not obtained. Title 18, U.S.C. § 3664(d)(5) provides that if the victim's losses are not ascertainable ten days prior to sentencing, "the court shall set a date for the final determination of the victim's losses, not to exceed 90 days after sentencing." Therefore, if a hearing on the issue of restitution is necessary, the Court can bifurcate the sentencing and determine the amount of restitution after its judgment is entered regarding the defendant's sentence.

pornography via an internet bulletin board.

The computers and other electronic media that were seized were forensically examined by ICE agents. A preliminary examination found at least 25 video files depicting suspected child pornography and at least 638 images depicting suspected child pornography. The images were sent to a law enforcement database of real, known victims of child pornography and exploitation for comparison. Located on the Seagate model 9W2512-560 external hard drive, serial number 4LH0CAQ7, were 127 picture images that matched those of known victims of child pornography.

Pursuant to it's obligations under the Crime Victims Rights Act, 18 U.S.C. §3771, the United States sent victim notification to the known victims identified in this matter. On May 29, 2009, an attorney representing one of the victims, "Vicky," provided the government with a package of materials requesting restitution. Specifically, "Vicky" requests restitution for future mental health counseling, the costs of a forensic evaluation, and attorney's fees. "Vicky," now an adult, states that she was sexual abused as a child by a relative over a period of approximately fifteen months. The relative produced numerous images of "Vicky's" abuse, which he then distributed in interstate commerce via the Internet. Those images are collectively known as the "Vicky" series. Later, in 2006, "Vicky" learned that images of her abuse had been distributed by the relative over the internet and were continuing to be distributed by numerous individuals. She has been informed by law enforcement authorities that these images of her sexual abuse have been distributed and possessed many times by multiple individuals, including defendant.[2] At the

---

[2] There are at least five current prosecutions regarding possession of child pornography wherein "Vicky" is a victim.

time of his arrest, defendant possessed one still photograph and one five minute video of images of "Vicky's" sexual abuse as a 10 or 11 year old child.

In support of the request for restitution in this matter, "Vicky's" attorney provided the United States with a comprehensive forensic psychological examination of "Vicky." The psychologist performing the evaluation opined that "Vicky" would need long term outpatient therapy to deal with the initial abuse and re-abuse stemming from her knowledge that images of her abuse are possessed and traded over the Internet. He calculated the costs of that therapy to be between $126,365 and $128,005. "Vicky's" package has been forwarded to United States Probation Office for inclusion in its presentence investigation and report. Recently, the United States received an additional package of materials from "Vicky's" attorney requesting that restitution include an additional $17,874.15 for the cost of the forensic psychological evaluation, and $4,200.00 for attorney's fees.

The Court has ordered the parties to submit sentencing memoranda by July 22, 2009. Sentencing is scheduled for July 29, 2009.

**II.   ARGUMENT**

   **A.   Title 18, U.S.C. § 2259 Provides For Mandatory Restitution**

Crimes involving the sexual exploitation and abuse of children are set forth in Chapter 110 of the United States Code. Restitution is a mandatory part of a defendant's sentence for all Chapter 110 offenses. See 18 U.S.C. § 2259(a). Defendant pled guilty to a Chapter 110 offense – possession of child pornography, in violation of Title 18, U.S.C. § 2252A(a)(5)(B). Title 18, U.S.C. § 2259(a) states, "[n]otwithstanding section 3663 or 3663A, and in addition to any other civil or criminal penalty authorized by law, the court shall order restitution for any offense under

this chapter." If the mandatory nature of this provision were not clear enough, the statute provides that "[t]he issuance of a restitution order under this section is mandatory." 18 U.S.C. § 2259(b)(4)(A).[3] Title 18, U.S.C. § 2259(b)(1) contemplates that the restitution order ". . . shall direct the defendant to pay the victim (through the appropriate court mechanism) the full amount of the victim's losses. . ." Because defendant pled guilty to a crime involving sexual exploitation of a child, the mandatory restitution provisions of 18 U.S.C. § 2259 apply. He is, therefore, liable for "the full amount" of "Vicky's" losses, including costs for the evaluation, any mental health therapy and attorney's fees.

**B.    Restitution Includes Anticipated Future Counseling Costs**

Defendants convicted of child exploitation offenses must compensate their victims for all losses. By statute, the term "full amount of the victim's losses" includes:

> (A) medical services relating to physical, psychiatric, or psychological care;
> (B) physical and occupational therapy or rehabilitation;
> (C) necessary transportation, temporary housing, and child care expenses;
> (D) lost income;
> (E) attorneys' fees, as well as other costs incurred; and
> (F) any other losses suffered by the victim as a proximate result of the offense.

18 U.S.C. § 2259(b)(2). For example, in United States v. Estep, 378 F.Supp.2d 763 (E.D. Ky 2005), the Court required a defendant to pay restitution as follows: 1) to his spouse for her divorce attorney's fees and rent payments; 2) for one child victim's transportation expenses to a new school; 3) for past, present and future treatment costs for three victims; and 4) restitution for

---

[3] Multiple cases have confirmed the mandatory nature of restitution involving Chapter 110 crimes, including crimes involving the receipt of child pornography, production of child pornography, sexual exploitation of a child, and conspiracy to engage in activities relating to child exploitation. See e.g. United States v. Julian, 242 F.3d 1245 (10th Cir. 2001); United States v. Danser, 270 F.3d 451 (7th Cir. 2001); and United States v. Laney, 189 F.3d 954 (9th Cir. 1999).

attorney's fees from a related civil case.

Several circuit courts have affirmed a district court's order of restitution for future counseling pursuant to § 2259.  See United States v. Danser, 270 F.3d at 455 ("In light of Congress's intent to make whole those victims of sexual exploitation, we find that section 2259 allows for restitutionary damages for future costs of therapy."); United States v. Julian, 242 F.3d at 1247 ("[D]istrict court was authorized under § 2259 to order defendant to pay for his victim's future counseling costs." ); United States v. Doe, 488 F.3d 1154, 1160 (9th Cir. 2007) ("We will uphold an award of restitution under Section 2259 if the district court is able to estimate, based upon facts in the record, the amount of victim's loss with some reasonable certainty."); and United States v. Laney,189 F. 3d at 966 ("[D]istrict court did not err in interpreting the statute to allow restitution for future counseling, and did not abuse its broad discretion, within the statutory framework, in setting the amount of restitution.").

The Ninth Circuit in Laney described how § 2259 was "phrased in generous terms, in order to compensate the victims of sexual abuse for the care required to address the long term effects of their abuse."  The court discussed how 18 U.S.C. § 2259 was much broader than 18 U.S.C. § 3663A, using the terms "*full* amount of the victim's losses," "*any* costs *incurred*" for physical, psychiatric, or psychological care," and "*any other losses* suffered by the victim as a proximate result of the offenses."  Id.  The court went on to note that the word "incur" means "become liable or subject to."  Id.  The court also discussed Congress's intent to provide abused children with treatment and its recognition that treatment for sexual exploitation was a long term process.  "Congress was well aware that children victimized by sexual abuse often do not recover quickly from their injuries."  Id., citing, S.Rep. No. 104-358, at 14 (1996).

There can be no question that a defendant's action in possessing child pornography is harmful to child victims. "The legislative judgment, as well as the judgment found in the relevant literature, is that the use of children as subjects of pornographic materials is harmful to the physiological, emotional, and mental health of the child." New York v. Ferber, 458 U.S. 747, 758 (1982).

> The distribution of photographs and films depicting sexual activity by juveniles is intrinsically related to the sexual abuse of children in at least two ways. First, the materials produced are a permanent record of the children's participation and the harm to the child is exacerbated by their circulation. Second, the distribution network for child pornography must be closed if the production of material which requires the sexual exploitation of children is to be effectively controlled.

Id. at 758-759. Courts have recognized the particular injury inflicted upon children exploited through pornography.

> Pornography poses an even greater threat to the child victim than does sexual abuse or prostitution. Because the child's actions are reduced to recording, the pornography may haunt him in future years, long after the original misdeed took place. A child who has posed for a camera must go through life knowing that the recording is circulating within the mass distribution system for child pornography. . . . It is the fear of exposure and the tension of keeping the act secret that seems to have the most profound emotional repercussions.

Julian, 242 F. 3d at 1247, citing New York v. Ferber, 458 U.S. 747, 758-60, n.n. 9, 10. Because victims are re-abused by persons convicted of possession of child pornography, they are entitled to restitution, including anticipated future therapy and counseling costs.

    **C.**    **Victim's Request Meets Proximate Cause Standard**

Section 2259 requires that the defendant pay restitution "for any offense" to the victim of

the offense, defining victim as "the individual harmed as a result of a commission of a crime under this chapter."  18 U.S.C. § 2259(c).  Thus, mandatory restitution is only available to victims who are harmed as a proximate result of the offense.  18 U.S.C. § 2259(b)(3)(F) and (c). The Court must determine by a preponderance of the evidence standard that the defendant's actions were a proximate cause of the victim's losses.  United States v. Crandon, 173 F.3d 122, 126 (3d Cir. 1999), citing United States v. Graham, 72 F.3d 352, 356 (3d Cir. 1995) ("The government has the burden of demonstrating by a preponderance of the evidence the amount of loss sustained by the victim.").  Here, defendant's actions were a proximate cause of the harm suffered by "Vicky."

A number of cases support the proposition that as a matter of law the defendant harmed "Vicky" and the other children depicted in the pornographic images he possessed.  Courts have found that the consumer or the end recipient who views child pornography causes harm to children being abused and exploited in photographs or videos.  See United States v. Sherman, 268 F. 3d 539, 547  (7th Cir. 2001) ("[t]he possession, receipt and shipping of child pornography directly victimizes the children portrayed by violating their right to privacy, and in particular violating their individual interest in avoiding the disclosure of personal matters"); United States v. Norris, 159 F.3d 926, 929 (5th Cir. 1998) ("the victimization of a child depicted in pornographic materials flows just as directly from the crime of knowingly receiving child pornography as it does from the arguably more culpable offenses of producing or distributing child pornography"); United States v. Miller, 146 F.3d 1281, 1285 (11th Cir. 1998) (in discussing why Congress amended 18 U.S.C. § 2252 to include consumers of child pornography the Court noted "the harm to the child exists regardless of the viewer's motivation"); United States v.

Hibbler, 159 F.3d 233, 237 (6th Cir. 1998) ("When it adopted 18 U.S.C. § 2252, Congress clearly considered the children depicted in such materials to be the primary victims . . . . [o]f deep concern to the Committee is the effect of child pornography. . .on the children who become involved. . . .  Such encounters cannot help but have a deep psychological, humiliating impact on these youngsters and jeopardize the possibility of health, affectionate relationships in the future" (citations omitted)).

The Fifth Circuit in Norris, articulated three ways in which the consumer of child pornography causes harm to the child victims.  "First, the simple fact that the images have been disseminated perpetuates the abuse initiated by the producer of the materials." Norris, 159 F.3d at 929.  "Second, the mere existence of child pornography represents an invasion of the privacy of the child depicted.  Both the Supreme Court and Congress have explicitly acknowledged that the child victims of child pornography are directly harmed by this despicable intrusion on the lives of the young and the innocent." Id. at 930.  "Third, the consumer of child pornography instigates the original production of child pornography by providing an economic motive for creating and distributing the materials."  Id.

As a factual matter, the defendant's actions caused "Vicky" harm.  In a Victim Impact Statement, "Vicky" describes some of the harm that she suffers when thinking about individuals like the defendant who have possessed and viewed images of her abuse.

> These past years have only showed me the enormity of the circulation of these images and added to my grief and pain.  This knowledge has given me a paranoia.  I wonder if the people I know have seen these images.  I wonder if the men I pass in the grocery store have seen them.  Because the most intimate parts of me are being viewed by thousands of strangers and traded around, I feel out of control.  They are trading my trauma around like treats at a party, but it is far from innocent.  It feels like I am being raped by each and every one of them.  What are they doing when they watch those videos anyway?  They are

> gaining sexual gratification from images of me at ages 10 and 11. It sickens me to the core and terrifies me. Just thinking about it now, I feel myself stiffen and I want to cry. So many nights I have cried myself to sleep thinking of a stranger somewhere staring at their computer with images of a naked me on the screen. I have nightmares about it.

The forensic psychological evaluation describes in more detail how the defendant's actions were a proximate cause of "Vicky's" losses. See Crandon, 173 F.3d at 126 (affirming district court's finding that proximate cause had been established based on consideration of a treating psychiatrist's report and licensed social worker's report on the degree of impact). Therefore, there can be little question that defendant's actions of possessing and viewing images of "Vicky's" child abuse caused her to suffer harm.

The Court is not required to determine that the defendant's actions were the only cause of a victim's losses. In Crandon, 173 F.3d at 126, the Third Circuit found the government established the defendant's actions were a contributing cause of the victim's hospitalization even though mental health experts testified that the victim may have suffered from prior psychological problems. The court "emphatically rejected the argument that it must be shown that a defendant's conduct was the sole and total cause of the victim's loss, holding that 'it was entirely reasonable for the District Court to conclude that the additional strain or trauma stemming from [the defendant's] actions was a substantial factor in causing the ultimate loss.'" United States v. Doe, 488 F.3d at 1160, citing Crandon, 173 F.3d at 126.

In determining causation, courts have applied a reasonableness test. "In every circuit to consider the causation requirement of Section 2259, a rule of reasonableness is applied." Doe, 488 F.3d at 1160. In Danser, the Seventh Circuit agreed that mathematical precision is not required in the causal analysis upholding a restitution award of $304,200. Danser, 270 F.3d at

455 (noting that it was "mindful of inherent uncertainties attendant upon an award of prospective damages). In Laney, the defendant pled guilty to a conspiracy offense. The Ninth Circuit found it was reasonably forseeable that actions taken by the defendant's co-conspirators would harm the victim. Therefore, the court determined that the defendant's actions were a proximate cause of the victim's injuries and he was liable for restitution. Laney, 189 F. 3d at 966. Similarly, in an unpublished opinion, the Second Circuit found the defendant's conduct to be the proximate cause of the child victims's loss of their home and father. See United States v. Searle, 65 Fed.Appx. 343, 2003 WL 21025186 (N.Y. 2003). The court concluded that costs for remodeling the victims's guardian's front porch and the purchase of a new vehicle were reasonable.

### D.    Calculating the Loss

The Court must determine the specific amount of restitution relating to present and future costs. "A restitution order must be specific in a dollar amount that is supported by evidence in the record." Julian, 242 F.3d at 1248. In Laney, the court determined the victim's future treatment needs through calculations presented by the victim's psychiatrist. Laney, 189 F.3d at 966-967. The Seventh Circuit in Danser, 270 F.3d 451, 455 (7th Cir. 2001), rejected the defendant's argument that future costs were anticipatory and the victim should be required to petition the court for restitution when treatment costs are incurred. The court found, "[w]e do not believe that Congress sought to create such a cumbersome procedure for victims to receive restitution. In enacting section 2259, it is clear that Congress intended to provide victims of sexual abuse with expansive relief for 'the full amount of . . .[their] losses' suffered as a result of abuse.'" Id. The court found the defendant liable for future treatment costs during the victim's projected lifetime based upon figures proffered by the victim's treating psychologist. Id. at 456,

n. 6.

In this matter, there are concrete figures provided for the restitution requested.[4] The psychologist concluded in his forensic evaluation that "Vicky" would need mental health treatment costing between $126,365 and $128,005. According to "Vicky's" attorney, the evaluation itself cost $17,874.15. In addition, "Vicky's" attorney asserts she spent approximately twelve hours working on this particular matter at the rate of $350/hour, totaling $4,200.

### E. Defendant's Circumstances and Liability of Others Irrelevant In Determining Restitution For Chapter 110 Offenses

Congress determined that victims of Chapter 110 offenses were entitled to restitution regardless of the defendant's circumstances or whether others may be liable for restitution to the victim as well. 18 U.S.C. § 2259(b)(4) This is a significant difference from the general mandatory restitution provisions of 18 U.S.C. § 3663(a)(1)(B), which allows the Court to consider, "the amount of loss sustained by each victim" and "the financial resources of the defendant, the financial needs and earning ability of the defendant, and the defendant's dependents, and such other factors as the court deems appropriate." In determining restitution to victims for Chapter 110 offenses, the Court may not consider those factors. 18 U.S.C. § 2259(b)(4)(B) states,

> A court may **not** decline to issue an order under this section because of–
> (i) the economic circumstance of the defendant; or
> (ii) the fact that a victim has, or is entitled to, receive compensation for his or her injuries from the proceeds of insurance or any other source.

18 U.S.C. § 2259(b)(4)(B) (emphasis added).

---

[4] In Title 18, U.S.C. § 2255(a), which provides a civil remedy for personal injuries suffered by victims of Chapter 110 offenses, Congress determined that victims "shall be deemed to have sustained damages of no less than $150,000 in value."

11

Congress intended a broad restitution remedy for victims of Chapter 110 offenses. "Section 2259 is phrased in generous terms, in order to compensate the victims of sexual abuse for care required to address the long term effects of their abuse." Laney, 189 F.3d 934. "The fact that the victim or the victim's family has or may be entitled to receive compensation for the same injuries from the proceeds or insurance or other sources is of no consequence in ordering restitution pursuant to 18 U.S.C. § 2259." Estep, 378 F.Supp.2d at 772. By its very nature, the existence of child pornography poses the possibility of multiple individuals being convicted of possessing child pornography and then found liable for restitution to a victim. Congress determined that courts could not consider that possibility when determining the amount of restitution pursuant to 18 U.S.C. § 2259.[5]

### F.     Restitution Mandatory In This Matter

Pursuant to 18 U.S.C. § 2259, the Court must order defendant to pay restitution. One of defendant's victims, "Vicky," requests restitution, specifically for future counseling, costs of the evaluation, and attorney's fees. A clinical psychologist forensically evaluated the victim and opined that she was not only traumatized by her initial abuse, but also suffers trauma due to the images of her abuse being disseminated and possessed by others, including defendant. Thus, "Vicky's" injuries were proximate caused by defendant's actions. Pursuant to 18 U.S.C. § 2259, it is mandatory that the defendant be ordered to pay "the full amount" of Vicky's losses. Based upon the psychologist's opinion that "Vicky" will need therapy into her fifties, and a calculation regarding the frequency of such therapy and associated costs, defendant should be ordered to pay

---

[5] Because a victim cannot receive more restitution than what he/she is due, the Court may order defendant to pay restitution jointly and severally with any other defendants convicted of a Chapter 110 offense involving the victim.

restitution in an amount between $126,365 and $128,005 for mental health treatment.[6]  In addition, restitution has been requested for "Vicky's" forensic evaluation in the amount of $17,874.15, and attorney's fees in the amount of $4,200.  Therefore, the total amount of "Vicky's" losses are between $148,439.15 and $150,079.15.

WHEREFORE, the United States respectfully requests that this Court enter an Order of Restitution to be paid to defendant's victim, "Vicky."

Respectfully submitted,

CHANNING D. PHILLIPS
Acting United States Attorney
D.C. Bar #415793


 /s/
MICHELLE ZAMARIN
D.C. Bar #424740
DIANE G. LUCAS
D.C. Bar #443610
Assistant United States Attorneys
555 4th Street N.W.
Washington, D.C. 20530
(202) 305-2195 (Zamarin)
(202) 514-7912 (Lucas)
Michelle.Zamarin@usdoj.gov
Diane.Lucas@usdoj.gov

---

[6] These costs appear conservative because they reflect current costs of therapy, which do not include any consideration of inflation.