**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | **Criminal No. 09-084 (EGS)** |
| | : | |
| **v.** | : | |
| | : | |
| **JOHN BOUGHTON,** | : | |
| | : | |
| **Defendant.** | : | |

**GOVERNMENT'S MEMORANDUM IN AID OF SENTENCING**

The United States, by and through its attorney, the United States Attorney for the District of Columbia,  respectfully submits this memorandum in aid of sentencing.

**I.      BACKGROUND**

In early 2008, the U.S. Immigration and Customs Enforcement (ICE) Cyber Crimes Center (C3), working in conjunction with the Department of Justice's Child Exploitation and Obscenity Section (CEOS) and the U.S. Postal Inspection Service (USPIS), initiated an investigation into an Internet forum known as "thecachebbs.com".  The Internet forum was a private, member only secured bulletin board dedicated to the distribution and advertisement of child exploitation material.  The bulletin board was seized by law enforcement thereby allowing investigators access to all parts of the board, to include member lists, profiles, and narrative postings, and locations where members could download child pornographic images.  One bulletin board member used the screen-name "mozda."  "Mozda" was an active member of the bulletin board from 2005 to 2008, with over 1800 narrative posts to the bulletin board.

The investigation into "mozda" revealed this persona was used by an individual accessing the Internet from an Internet Protocol address assigned to 5503 33rd Street, N.W., Washington,

D.C.  Verizon Internet Services, Inc. provided residential Internet service to 5503 33rd Street, N.W., Washington, D.C.  The defendant, John Boughton, was one of the Verizon Internet Services, Inc., subscribers on the account for 5503 33rd Street, N.W., Washington, DC.

On October 30, 2008, a search warrant issued by the United States District Court for the District of Columbia was executed by ICE agents at 5503 33rd Street, N.W., Washington, DC.  ICE agents seized five computers and various other electronic media, including a Seagate model 9W2512-560 external hard drive, serial number 4LH0CAQ7, from 5503 33rd Street, N.W., Washington, D.C.  Incident to search warrant execution, ICE agents interviewed the defendant at 5503 33rd Street, N.W., Washington, D.C.  The defendant told agents he possessed and had received child pornography via the "thecachebbs.com" bulletin board using the screen-name "mozda."  The defendant provided agents a written statement acknowledging the same.

The computers and other electronic media seized from 5503 33rd Street, N.W., Washington, D.C., were forensically examined by ICE agents.  A preliminary forensic examination of just some of the devices seized revealed the presence of at least 25 video files depicting suspected child pornography and at least 638 images depicting suspected child pornography stored on the seized computers and other electronic media.

The 638 images depicting suspected child pornography were electronically compared to images housed in the National Child Victim Identification Program (NCVIP) database.  The NCVIP is a law enforcement database of real, known victims of child pornography and exploitation.  Located on the Seagate model 9W2512-560 external hard drive, serial number 4LH0CAQ7, were found 127 picture images that matched those of  known victims of child pornography.  These 127 images of known child victims were located in folder \Teaching Back-

up\UK, and are evidence of child pornography and the acquisition of child pornography,

including the following:

  a.  Under the file path \Teaching Back-up\UK\HC\Msmsflf (2).jpg,  last accessed on October 7, 2008, is an image identified as Msmsflf (2).jpg.  The image is centered on a prepubescent girl's posterior.  The girl is on her knees with her upper body bent forward.

  b.  Under the file path \Teaching Back-up\UK\CANDS\Amshhwww (2).jpg, last accessed on February 21, 2008, is an image identified as Amshhwww (2).jpg.  The image is centered on a prepubescent girl's posterior.  The girl is kneeling on a chair, positioned so that her head is facing away.  With her hands, the girl has grabbed and spread her buttocks to expose her vagina and anus.

Of the 638 images depicting suspected child pornography, 29 images depict suspected

child bondage and bestiality, and were located on the Seagate model 9W2512-560 external hard

drive, serial number 4LH0CAQ7, including the following:

  a.  Under the file path \Teaching Back-up\UK\HC\Series\Jen1 (20).jpg, last accessed on October 14, 2008, is an image identified as Jen1 (20).jpg.  The image is of a prepubescent girl holding the penis of a white furred animal with her left hand. The penis of the animal is inserted in the girl's mouth.

  b.  Under the file path \Teaching Back-up\UK\HC\Series\Jen1 (2).jpg, last accessed on October 14, 2008, is an image identified as Jen1 (2).jpg.  The image is of a naked prepubescent girl laying face up on a bed.  The girl's hands are positioned above her head.  The girl's legs are spread to expose her vagina.  A yellow rope is tied to her left and right calves.  The yellow rope extends down the sides of the bed.  There is no slack in the rope.

The video files depicting suspected child pornography were located on the Seagate model

9W2512-560 external hard drive, serial number 4LH0CAQ7, and included the following:

  a.  Under the file path \Teaching Back-up\UK\HC\Mo\RGA.WMV, last accessed October 14, 2008, is a video identified as RGA.wav.  The video is over 16

minutes long and has sound.  It features a prepubescent girl and a mature male. The prepubescent girl is shown performing fellatio, and the male penetrating the girl's vagina with his fingers and with his penis.

b.      Under file path \Teaching Back-up\UK\HC\Mo\Dvddq.wmv, last accessed on October 14, 2008, is a video identified as Dvddq.wmv.  The video is over 1 minute long and has sound.  It features a prepubescent girl and a mature male engaging in sexual intercourse.

## II.     SENTENCING CALCULATION

### A.     Statutory Maximums

A violation of Title 18 United States Code, Section 2252A(a)(5)(B) carries a maximum imprisonment of ten years, a fine of $250,000, and a term of supervised release of between five years and life.  See 18 U.S.C. §§ 2252A(a)(5)(B) , 3571(b)(3), 3583(k).

### B.     Sentencing Guidelines Calculation

The Guideline calculation in the Presentence Report places the defendant's base offense level at 18.  See PSR ¶ 19.  He received a two level enhancement for possessing material that involved a prepubescent minor or a minor who had not attained the age of 12 years, a four level enhancement for possessing material that portrayed sadistic or masochistic conduct or other depictions of violence, a two level enhancement for the use of a computer, and a five level enhancement for the possession of more than 600 images.  The defendant's adjusted offense level is 31.  See PSR ¶ 27.  The defendant does accept responsibility for his conduct underlying the charges for which he has been convicted.  See PSR ¶ 29.  In light of the defendant's timely notice to the govenrment of his intention to plead guilty, the government requests that the defendant receive an additional one-point adjustment for acceptance of responsibility pursuant to §3E1.1(b) of the United States Sentencing Commission, Guidelines Manual, 2008 ed. (hereinafter

"Sentencing Guidelines" or "U.S.S.G."). The PSR calculates the defendant's criminal history score as 0, and his criminal history category as I. <u>See</u> PSR ¶ 33. The defendant's guideline range for imprisonment is 78 to 97 months based on his total offense level of 28 and criminal history score category of I.

## III.   **GOVERNMENT'S RECOMMENDATIONS**

For the reasons set forth below, the government respectfully recommends that the Court sentence the defendant 97 months of imprisonment. This sentence satisfies the requirements set forth in Title 18, United States Code, Section 3553(a).

### A.    <u>Victim Impact Statements</u>

Victim impact statements for identified child victims, or members of their families, have been submitted under seal by a separate motion.

### B.    <u>Application of the Federal Guidelines post-*Booker*</u>

In <u>United States v. Booker</u>, 125 S. Ct. 738 (2005), the Supreme Court held that the mandatory application of the United States Sentencing Guidelines violates the Sixth Amendment principles articulated in <u>Blakely v. Washington</u>, 124 S. Ct. 2531 (2004). As a consequence, the Court invalidated the statutory provision that made the Guidelines mandatory, Title 18, United States Code, Section 3553(b)(1). <u>Booker</u>, 125 S. Ct. at 756.

Nonetheless, and as the Supreme Court has stated, a district court should begin all sentencing proceedings by correctly calculating the applicable Guidelines range. <u>See</u> <u>United States v. Gall</u>, 128 S.Ct.586 (2007) ("As a matter of administration and to secure nationwide consistency, the Guidelines should be the starting point and the initial benchmark"). The district court should then consider all of the applicable factors set forth in Title 18 United States Code,

Section 3553(a).  See id.  These factors include "the nature and circumstances of the offense and the history and characteristics of the defendant" (18 U.S.C. § 3553(a)(1)); the need for the sentence imposed to reflect the seriousness of the offense, to provide just punishment for the offense, to afford adequate deterrence to criminal conduct, to protect the public from further crimes of the defendant, and to provide the defendant with needed correctional treatment (18 U.S.C. § 3553(a)(2)); the Sentencing Guidelines and related Sentencing Commission policy statements (18 U.S.C. § 3553(a)(4) and (a)(5)); and the need to avoid unwarranted sentence disparities (18 U.S.C. § 3553(a)(6)).

The Guidelines themselves thus seek to implement – in a fair and uniform way – the offense specific characteristics.  It thus remains true that, absent unusual circumstances, the sentence in a criminal case should fall within the Guideline range as determined by the district court.  In this case, as explained further below, no unusual circumstances exist that warrant an exception to the preference for Guideline sentencing.  Therefore, the government respectfully recommends that the Court sentence the defendant within the applicable Guidelines range to 97 months of imprisonment, which will effectuate the requirements set forth in Section 3553(a).

    C.    Basis for Government's Sentencing Recommendation

Turning specifically to the § 3553 factors, without question the defendant's conduct in repeatedly viewing images of child pornography was depraved and perpetuated the horrific victimization of the children depicted in those images.[1]  Recognizing the growing epidemic of

---

[1]  To more fully appreciate the horrors to which the victims were subjected, the government urges the Court to review prior to sentencing a computer disk, or photographs, of the images recovered from the defendant.  The government can provide the images to the Court at the Court's convenience.

child pornography and the deeply damaging and enduring effects of abuse on the victims of child pornography, Congress has chosen to impose severe penalties for such offenses. In doing so, Congress has found that "[t]he illegal production, transportation, distribution, receipt, advertising and possession of child pornography ... is harmful to the physiological, emotional, and mental health of the children depicted in child pornography and has a substantial and detrimental effect on society as a whole." Adam Walsh Child Protection and Safety Act of 2006, H.R. 4472, 109th Congress, 2nd Sess. §501(1)(A) (2006). Moreover, Congress recognized that "[e]very instance of viewing images of child pornography represents a renewed violation of the privacy of the victims and a repetition of their abuse." *Id.* at §501(2)(D). *See also*, Prosecutorial Remedies and Other Tools to End the Exploitation of Children Today Act of 2003, H.R. Conf. Rep. No. 66, 108th Congress, 1st Sess. §501 (2) (2003) (hereinafter the "PROTECT Act") ("'The prevention of sexual exploitation and abuse of children constitutes a government objective of surpassing importance,' New York v. Ferber, 458 U.S. 747, 757 (1982), and this interest extends to stamping out the vice of child pornography at all levels in the distribution chain. Osborne v. Ohio, 495 U.S. 103, 110 (1990).")

To effectuate Congress's clear intent in enacting these child pornography laws, the defendant's punishment should take into account the traumatic impact of his actions on its victims, the children throughout the world who are forced or tricked into the degradation that is child pornography for the mere gratification of adults like this defendant. Because the Internet has become the distribution medium of the photographs, the degradation of these children is permanent, continuous, and impossible to eradicate. It is the ultimate humiliation that all of the victims, whether rescued and identified or not, are left with a terrible burden to carry for the rest

of their lives: the knowledge that not only were they victimized by the predators who used them to create pornographic images, but that these images remain in circulation, and are viewed again and again and again by those who derive pleasure from seeing the images. "Child pornography invariably produces great shame and guilt in the children involved, especially as they get older and more fully comprehend the enormity of their abuse and know that there is a permanent record of the degradation out there, circulating around for people to see – maybe future friends or their own children when they grow up." Dr. Victor B. Cline, Pornography's Effects on Adults & Children, http://obscenitycrimes.org/clineart.cfm, (2001).  As the Fifth Circuit succinctly has stated, "[u]nfortunately, the 'victimization' of the children involved does not end when the camera is put away."  United States v. Norris, 159 F.3d 926, 929 (5th Cir. 1998), *cert. denied*, 526 U.S. 1010 (1999).

The Defendant's punishment also should take into account the effect that his actions had on fueling the child pornography industry. The number of images of new abuse has seen an explosive growth since the advent of the Internet, and the number of images of new abuse being traded over the Internet continues to climb rapidly - feeding a demand and fueling a market that, in turn, drives the abuse of more children.  The images and videos have become increasingly severe, depicting violent sexual abuse of younger and younger children, including infants and toddlers.  This is what the market now demands.

We know for certain that each person who participates in this market is increasing the demand for newer and more extreme images, which in turn leads to additional abuse to satisfy the increasing demand. In enacting the PROTECT Act, Congress quoted with approval the Supreme Court's comment in Ferber that "[t]he most expeditious if not the only practical method

of law enforcement may be to dry up the market for this material by imposing severe criminal penalties on persons selling, advertising, or otherwise promoting the product."   H.R. Conf. Rep. No. 108-66 at §501(3), *quoting* 458 U.S. at 760.  Consumers of child pornography are among those who otherwise promote the product, as they "instigate[] the original production of child pornography by providing an economic motive for creating and distributing the materials." Norris, 159 F.3d at 930.  *See also*, United States v. Adams, 343 F.3d 1024, 1034 (9th Cir. 2003), *cert. denied*, 542 U.S. 921 (2004) (stressing the national interest in severely punishing consumers of child pornography, because "the possession of commercial child pornography [whether the possession resulted from inter- or intrastate sale, trade, or dissemination] substantially affects the national market for child pornography").

In this case the defendant was discovered by law enforcement because from 2005-2008 he posted over 1800 narratives on a bulletin board where child pornography was available.  By posting over 1800 narratives the defendant epitomized the consumer imagined by Congress.  The defendant was an active participant in the exploitation of children, aiding in the growth of the industry by advancing the actions of others on the board.  The defendant may not have posted images on the board but his participation in the conversation encouraged those who possessed images to post, and no doubt showed those with the ability to produce that a demand existed for new images.

The defendant in his Memorandum in Aid of Sentencing requests that the Court sentence him to a substantial departure below the sentencing guideline range relying primarily on an article by Troy Stabenow as support.  The defendant's reliance on the article is misplaced as it is premised on a number of fundamental misunderstandings, primarily the seriousness of the crime.

The collection, trade, and possession of images of child pornography are not illegal because of society's disgust with pornography, as the defendant and the article suggest. The heart of a child pornography case is the endless sexual exploitation of a child through the ongoing mass circulation of images of their abuse. In the words of a child victim from this case who was raped and bound repeatedly by her father for 2 years starting when she was 10 and of whom a video depicting such rape was possessed by the defendant:

> Thinking about all those sick perverts viewing my body being ravished and hurt like that makes me feel like I was raped by each and every one of them. I was so young and so helpless feeling. It terrifies me that people enjoy viewing things like this. Every time I think about it, my whole body goes ice cold and my tears well up in my eyes. I can't even think about it most of the time. It hurts so much. Each person who has found enjoyment in these sick images needs to be brought to justices . . . . They are dangerous and even though I don't know them, they are hurting me still. They have exploited me in the most horrible way.

The defendant claims that he suffers from a psychological compulsion to collect and categorize. The defendant, however, is not "unique" nor are his circumstances. <u>See</u> Defendant's Memorandum at 3. Most offenders, like the defendant, tend to compulsively collect images, much like baseball aficionados collect baseball cards. The collections are often meticulously organized by name of the child, sex of the child, age of the child or type of sexual activity depicted in the image of the child. Collectors use these images much like currency, trading images for new ones that are highly coveted. The drive, in this underground market, is to collect *new* images. Thus it is easy to see how this drives the abuse of children to satisfy the demand.

The defendant argues, however, that his conduct must be placed in "context." <u>See</u> Defendant's Memorandum at 8. He believes that because he did not distribute, produce, upload or share any images, did not have actual contact with a child, or profit, that he should receive a

significant downward departure from the Sentencing Guidelines.  This argument fails for no
other reason than the fact that the child pornography laws are not premised on the assumption
that all collectors are also abusers. The child pornography laws were not designed to serve as a
method of catching child rapists by other means, although they may sometimes function that way.
Rather, as already explained, they prohibit the exploitation of children through the collection of
the images, a distinct and deplorable form of child abuse that inflicts specific harms upon its
victims.

A lengthy sentence of incarceration therefore is necessary and warranted in this case not
only to punish defendant for this extremely disturbing offense, but also to send a message to
others that serious consequences will flow from such behavior and thus hopefully better protect
children from these unspeakable abuses.  The government requests that the Court impose a
sentence of 97 months imprisonment and a term of supervised release of ten years, conditioned
on defendant's compliance with the conditions set forth in paragraph 58 of the Presentence
Investigation Report.  This recommended sentence is reasonable, appropriate, and necessary to
satisfy Congress's stated sentencing objectives.

IV.     **CONCLUSION**

Wherefore, the government respectfully requests that the Court sentence the defendant to

97 months.

Respectfully submitted,

CHANNING D. PHILLIPS
Acting United States Attorney
Bar # 415793

By:     /s/
_____

MICHELLE A. ZAMARIN
Assistant United States Attorney
Bar No. 424740
Federal Major Crimes Section
555 4th Street, N.W., 4th Floor
Washington, D.C.  20530
(202) 305-2195
michelle.zamarin@usdoj.gov